UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRITON BIO-ENVIRONMENTAL, LLC

VERSUS

CHENG CHI LIN, ET AL.

CIVIL ACTION

NO: 24-520

SECTION: "T" (5)

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (R. Doc. 129) filed by counterclaim defendants Triton Bio-Environmental, LLC, d/b/a Mitigation Technologies ("Triton") and AXIS Surplus Insurance Company ("Axis") (collectively, "Counterclaim-Defendants"), seeking dismissal with prejudice of counterclaim plaintiffs, Cheng Chi Lin and Tina Lin's (collectively, "Counterclaimants" or "the Lins"), claims of negligence and for immovable property damage. Counterclaimants have responded in opposition, R. Doc. 131, and Counterclaim-Defendants have filed a reply in support of the motion, R. Doc. 132, which is now submitted to the Court. Having reviewed the briefs, the record, and the applicable law, the Court will **DENY** Counterclaim-Defendants' Motion.

## I. BACKGROUND

This dispute arises from mitigation and demolition work performed on the Lins' commercial immovable property, which sustained storm-related water intrusion and related damage during Hurricane Ida.[1] R. Doc. 1, p. 3; R. Doc. 129-1, p. 1. In the immediate aftermath of the storm, the Lins, through their property manager, Julie Green, signed a contract with Triton to perform emergency mitigation and remediation services on the property on September 15, 2021.

---

[1] The property in question "consists of two commercial buildings housing five separate business units" and is located at 3223-3229 Williams Boulevard in Kenner, Louisiana. R. Doc. 129-1, p. 1.

R. Doc. 129-1, pp. 1-2 (citing R. Doc. 60-5). In February or March 2022, "Triton broke a wall in the interior of the property." *Id.* at p. 2 (citing R. Docs. 60-5, 129-2). In April or May 2022, "Triton advised Ms. Green that it had damaged the fencing surrounding a dumpster on the property." *Id.* (citing R. Doc. 129-2). Triton's work on the Lins' property was completed around April or May 2022. *Id.* (citing R. Doc. 129-2). In September 2022, Maxum Indemnity Company ("Maxum"), the Lins' commercial liability carrier, informed the Lins that "it had completed review of the mitigation package and found 'the support and scale of the work was excessive.'" *Id.* at p. 3 (quoting R. Doc. 129-5).

Triton filed its complaint against the Lins for breach of contract in this Court in February 2024, alleging that the Lins "failed to pay [Triton] for the goods and services provided," amounting to over one million dollars. R. Doc. 1, p. 3. In their answer, which was filed in May 2024, the Lins raised a counterclaim against Triton, Axis, and others, asserting breach of contract claims and alleging that Triton "completely gutted the property, removing and damaging significantly more than what was necessary and reasonable for the situation."[2] R. Doc. 7, pp. 5-12. In their Second Amended Answer and Counterclaim, filed after obtaining leave of court in November 2024, the Lins asserted negligence claims against the Counterclaim-Defendants, as well as a claim for the breach of implied warranty of good workmanship. R. Doc. 48, pp. 12-14. Following mediation and settlement, Triton agreed to dismiss its breach of contract claim against the Lins. *See* R. Docs. 75, 78.

In June 2025, the Court issued a scheduling order setting a jury trial to begin on March 30, 2026. R. Doc. 99, p. 5. The scheduling order also provided that "all discovery shall be completed

---

[2] Axis was originally listed as "an unknown insurer" who "upon information and belief is responsible for the acts or failure to act of [Triton] and / or [its] agents." R. Doc. 7, p. 6. In their First Amended Answer, Affirmative Defenses, and Counterclaim, the Lins identified this "unknown insurer" as Axis. R. Doc. 8, p. 6.

no later than Monday, January 26, 2026" and that all dispositive motions "shall be filed and served in sufficient time to permit hearing thereon no later than Wednesday, February 11, 2026." *Id.* at pp. 1-2.

On February 2, 2026, Counterclaim-Defendants sought leave of Court to file a Motion for Summary Judgment. R. Doc. 120. Finding good cause because Counterclaimants' discovery responses were not produced until the evening before the dispositive motion deadline, the Court granted leave for Counterclaim-Defendants to file the instant motion. R. Doc. 128. The motion seeks dismissal with prejudice of Counterclaimants' claims of negligence and for immovable property damage, arguing that these tort claims have prescribed.[3] R. Docs. 129, 129-1. Counterclaimants responded in opposition to the motion on two grounds, arguing that (1) neither Triton nor Axis raised prescription as an affirmative defense in any pleading, thus waiving the defense, and (2) there is a genuine issue of material fact as to when the Counterclaimants knew or should have known of the alleged negligence. R. Doc. 131. Counterclaim-Defendants then submitted a reply memorandum, arguing that because the prescription defense was "raised at a pragmatically sufficient time" and Counterclaimants are not prejudiced in their ability to respond, the prescription defense may still be considered by this Court. R. Doc. 132. The movants also argued that there is no dispute as to when Counterclaimants knew or should have known of the alleged damage to their property because the September 2022 letter from Maxum "constructively put [them] on notice of negligence" and "would have led a reasonable person to inquire further." *Id.* The motion is now submitted before the Court.

## II. LAW and ANALYSIS

### a. *Summary Judgment Standard*

---

[3] The instant motion does not address the breach of contract or breach of warranty claims.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation removed). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial."

4

*Celotex*, 477 U.S. at 323-24. This burden is not satisfied by "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)) (emphasis in original). Thus, "summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)) (emphasis in original).

### b. *Liberative Prescription for Tort Actions*

Here, Counterclaim-Defendants argue that Counterclaimants' tort claims for negligence and damage to immovable property have prescribed. R. Doc. 129. Under the current Louisiana Civil Code, delictual actions (i.e., tort actions) "are subject to a liberative prescription of two years." La. Civ. Code art. 3493.1, *as enacted by* TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315). This is a change from former Article 3492, which had established a prescriptive period of one year for delictual actions. *See* La. Civ. Code art. 3492, *repealed by* TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315). However, the change from a one-year to two-year

prescriptive period was "given prospective application only and shall apply to delictual actions arising after the effective date of [Act 423]," which was July 1, 2024. TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315); *see also Parker v. Chet Morrison Contractors, LLC*, No. CV 23-5112, 2024 WL 3970312, at *5-7 (E.D. La. Aug. 28, 2024). Accordingly, because the alleged facts underlying Counterclaimants' tort claims occurred before the July 1, 2024, effective date of Act 423, a one-year prescriptive period applies in this case.

For the same reasons, former Article 3493, which set forth the commencement of prescription for tort claims concerning damage to immovable property, shall also apply. That article states, "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La. Civ. Code art. 3493, *repealed by* TORT ACTIONS, 2024 La. Sess. Law. Serv. Act 423 (H.B. 315). Accordingly, to determine whether the claims at issue have prescribed, the Court must determine when, exactly, Counterclaimants "acquired, or should have acquired, knowledge of the damage" to their immovable property.

### c. *Waiver of the Prescription Defense*

Before proceeding with that inquiry, however, the Court must first assess whether Counterclaim-Defendants waived the affirmative defense of prescription by not pleading it in their answers to the counterclaim. In their response to the instant motion, Counterclaimants argue that because Counterclaim-Defendants did not raise prescription as an affirmative defense in any pleading, they "waived a defense of prescription as an unfair surprise." R. Doc. 131, p. 1.

Generally, a defendant to a claim must present any affirmative defenses in its answer to the complaint, or the defenses are otherwise waived.[4] *See* Fed. R. Civ. P. 8(c)(1); *Bradberry v.*

---

[4] "Louisiana procedural law allows for the peremptory exception of prescription to be raised at any time prior to the submission of the case for decision. However, when a federal court is applying state law, 'substantive state law

*Jefferson Cnty*, 732 F.3d 540, 553 (5th Cir. 2013). However, "if the defense is later presented 'in a manner that does not result in unfair surprise[,] . . . technical failure to comply precisely with Rule 8(c) is not fatal.'" *Bradberry*, 732 F.3d at 553 (quoting *Allied Chem. Corp. v. Mackay*, 695 F.3d 854, 855-56 (5th Cir. 1983)) (alterations in original). Such a defense may be considered "if it was raised 'at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* (quoting *Allied Chem. Corp.*, 695 F.3d at 856) (alterations in original). "This 'play in the joints' is acceptable because 'Rule 8(c)'s purpose is to give the plaintiff fair notice.'" *Brown v. City of Central*, No. 23-30146, 2024 WL 546340, at \*4 (5th Cir. Feb. 12, 2024) (quoting *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017)). In this context, "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff." *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008). When making the prejudice inquiry, "[a] court may consider whether knowing of the defense at an earlier time would change the parties' trial strategy." *Poe*, 2019 WL 13257719, at \*7 (citing *Lee v. United States*, 765 F.3d 521, 525 (5th Cir. 2014)).

Despite the existence of this "play in the joints," the Court finds in this case that the prescription defense was not raised "at a pragmatically sufficient time." The instant motion was filed on February 2, 2026, less than two months before the trial date of March 30, 2026. The Court is unaware of—and Counterclaim-Defendants do not provide an example of—any caselaw finding that the raising of an affirmative defense past the discovery deadline and less than two months from trial constitutes a "pragmatically sufficient time" to avoid "unfair surprise" and prejudice to

---

determines what constitutes an affirmative defense[,]' but the Federal Rules of Civil Procedure dictate 'the manner and time in which defenses are raised and waiver occurs.'" *Poe v. Fuller*, No. CV 17-913, 2019 WL 13257719, at \*6 (W.D. La. Oct. 1, 2019) (citing La. Code Civ. Proc. arts. 927-28 and quoting *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007)).

the plaintiff. For example, in *Bonti v. Ford Motor Co.*, the Southern District of Mississippi allowed the introduction of an affirmative defense in a motion for summary judgment because it was filed "more than a year before the scheduled trial" and the plaintiff "ha[d] not indicated that there [was] any information necessary for her to properly respond and defend against the affirmative defense." 898 F. Supp. 391, 395 (S.D. Miss. 1995). In *Solomon v. Spalitta*, the Fifth Circuit affirmed granting of summary judgment on the issue of prescription where "the defendants did not strictly comply with the requirements of Federal Rule of Civil Procedure 8(c)(1)" because the defendants raised the affirmative defense in their answer after the case was transferred to a district court in Louisiana. 484 Fed. Appx. 883, 855 (5th Cir. 2012).

Other cases cited by Counterclaim-Defendants deal with defendants raising affirmative defenses of *in pari delicto* and insurance policy exclusions after failing to raise them in their answers. First, in *Rogers v. McDorman*, the Fifth Circuit found no "unfair surprise" to plaintiffs when defendants raised the *in pari delicto* defense because, although their answers did not directly raise the defense, they did specifically raise the plaintiffs' conduct as an affirmative defense, which put the plaintiffs on notice that the *in pari delicto* defense may be raised. 521 F.3d 381, 386 (5th Cir. 2008). Next, in *Standard Waste Systems Ltd. v. Mid-Continent Cas. Co.*, the Fifth Circuit found that an insurer's failure to plead a policy exclusion barring coverage for damage resulting from pollution in its answer "did not result in unfair surprise or prejudice" because "[t]he only issue in this case has been the applicability of the pollution exclusion." 612 F.3d 394, 398-99 (5th Cir. 2010). Each of these cases allowing the post-answer raising of an affirmative defense is distinct from the case presently before the Court: here, the affirmative defense of prescription was raised less than two months before the scheduled trial; Counterclaimants have indicated the need for discovery to target the issue of prescription, *see* R. Doc. 131, p. 11; the delay in raising the

prescription defense was not the result of a venue transfer; no other defenses raised in previous answers put Counterclaimants on notice that prescription may be at issue; and the issue of prescription has not been "the only issue" in the case thus far.

Also in contrast to the instant case is *Poe v. Fuller*, in which the Western District of Louisiana considered whether the defendant in a medical malpractice case first raising prescription in a motion for summary judgment filed one and a half years after her answer raised the defense "at a pragmatically sufficient time." 2019 WL 13257719, at *7-8 (W.D. La. Oct. 1, 2019). There, the court ultimately found that the defense was raised at a pragmatically sufficient time because "no trial date was set," giving the plaintiff "ample time" to adjust his trial strategy and conduct additional discovery if necessary. *Id.* at *8. Similarly, in *Motion Medical Technologies, L.L.C. v. Thermotek, Inc.*, the Fifth Circuit found "fair notice" when an affirmative defense not raised in the defendants' answer "first surfaced at the summary judgment stage *before discovery closed* and *nearly two years before trial*." 875 F.3d 765, 771-72 (5th Cir. 2017) (emphasis added). In contrast, Counterclaim-Defendants in this case raised the prescription defense for the first time less than two months before trial and after the discovery deadline. Thus, allowing Counterclaim-Defendants to proceed with this defense would prejudice the Counterclaimants who have not targeted the issue of prescription in the now-closed discovery process. Accordingly, the Court finds that Counterclaim-Defendants have waived the affirmative defense of prescription.

### d. Genuine Disputes Regarding the Commencement of Prescription

Further, Counterclaimants, argue that summary judgment on the issue of prescription would not be proper due to a genuine dispute of material fact. R. Doc. 131, p. 2. Specifically, the parties dispute when Counterclaimants "acquired, or should have acquired, knowledge of the damage" to their immovable property, which would determine when the one-year liberative

prescription period commenced. Counterclaim-Defendants assert that "the Lins have known about the property damage caused to the wall and fencing surrounding a dumpster on their property since at least May 2022" and that they "had knowledge that their property may have allegedly been over-mitigated since September 27, 2022" (the date of the Maxum letter). R. Doc. 129-1, p. 8. In response, Counterclaimants dispute the movants' claims that they had knowledge of the alleged over-mitigation since September 2022. R. Doc. 131, p. 8. They also argue that their earlier knowledge of the property damage caused to the wall and fencing surrounding a dumpster on their property "does **not** establish when they knew or should have known that Triton's *overall mitigation strategy* exceeded the duty owed[.]" *Id.* (emphasis in original). Reasonable jurors could disagree as to whether the September 2022 letter from Maxum constituted notice of potential negligence or merely reflected a dispute regarding insurance coverage and valuation of claims. Given the fact-intensive nature of such a determination, the Court finds that, even if Counterclaim-Defendants had not waived the affirmative defense of prescription, it would be unable to grant summary judgment on this issue.

Accordingly,

**IT IS ORDERED** that Motion for Summary Judgment (R. Doc. 129) filed by Triton and Axis is **DENIED**.

New Orleans, Louisiana, this 9th day of March 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE